IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | |
| ) | CA. No. 05-cv-3188-CMC |
| Robert Michael Ardis, ) | |
| ) | Appeal from |
| Debtor-Appellant, ) | Adv. Proceeding No. 04-80216-WB |
| ) | Filed in Bankruptcy Case No. 98-883 |
| v. ) | |
| ) | |
| Educational Credit Management Corp., ) | |
| ) | |
| Respondent. ) | |
| ) | |

This matter is before the court on appellant-debtor Robert Michael Ardis's appeal of the bankruptcy court's determination that Ardis is not entitled to a hardship discharge of his student loan obligations under 11 U.S.C. § 523(a)(8). That determination and the bankruptcy court's reasoning are set forth in an Amended Order entered September 6, 2005 ("Amended Order"). For the reasons set forth below, this court affirms the decision of the bankruptcy court.

**STANDARD OF REVIEW**

On review of a bankruptcy court's order, the district court functions as an appellate court and may affirm, reverse, modify or remand with instructions for further proceedings. Fed. R. Bankr. P. 8013. The district court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions de novo. *In re Frushour,* 433 F.3d 393, 398-99 (4th Cir. 2005). A factual finding is clearly erroneous when, even if there is evidence to support it, the reviewing court is left with the definite and firm conviction, based on the entire record, that a mistake has been committed. *Anderson v. City of Bessermer City,* 470 U.S. 564, 573 (1985). The application of the relevant legal standard to the facts reasonably found is, however, a question of law to be resolved under a *de novo* standard of review. *Frushour*, 433 F.3d at 399 (holding appellate court should "review *de novo* the

determination of whether a debtor has met the undue hardship standard [but] review the factual underpinning of that legal conclusion for clear error").

## DISCUSSION

**I. Test Applicable to "Undue Hardship" Discharge.**

In deciding whether to grant Ardis an "undue hardship" discharge of his student loan obligations, the bankruptcy court applied the three-part test set forth in *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). That test, which is conceded to be the proper test, was first adopted by this district in *In re Ammerati,* 187 B.R. 902 (D.S.C. 1995), *aff'd* 85 F.3d 618 (4th Cir. 1996) (table), and has recently been adopted by the Fourth Circuit Court of Appeals for use in Chapter 7 proceedings. *Frushour,* 433 F.3d at 400.

As stated in *Frushour*:

> In order to prove an undue hardship, . . . a debtor must show: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [him]self and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Frushour,* 433 F.3d at 400. The "debtor has the burden of proving all three factors by a preponderance of the evidence." *Id.*[1]

The bankruptcy court found in Ardis's favor on the first two prongs of the *Brunner* test. It concluded, however, that Ardis had failed to satisfy his burden under the third prong which required Ardis to establish, by a preponderance of the evidence, that he had made good faith efforts to repay the loan. Ardis has appealed this determination.

---

[1] The Amended Order which is the subject of this appeal was entered prior to the Fourth Circuit's issuance of its decision in *Frushour*. The standards applied by the bankruptcy court were, however, the same as those applied in *Frushour.*

In *Frushour,* the Fourth Circuit explained that the third factor, "looks to the debtor's efforts to obtain employment, maximize income, and minimize expenses" and requires that "the debtor's hardship must be a result of factors over which [he] had no control." *Frushour*, 433 F.3d at 402. Critically for the present case, the court also noted: "The debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good faith inquiry. . . . Although not always dispositive, it illustrates that the debtor takes [his] loan obligations seriously, and is doing [his] utmost to repay them despite [his] unfortunate circumstances." *Id.* (concluding that the bankruptcy court erred in finding good faith because the debtor, despite making over twenty-four[2] payments, "did not seriously consider the income contingent plan under the William D. Ford Direct Loan Program."). Through the present appeal, Ardis asks this court to conclude that the bankruptcy court erred in finding an absence of good faith under circumstances similar to those in which the majority in *Frushour* directed such a finding.[3]

---

[2] The debtor in *Frushour* made twenty-four consistent voluntary payments before seeking a deferral and then going into default. After her default, one tax refund of nearly two thousand dollars was seized as payment on the student loan obligation. Frushour believed a second refund had also been seized as it had not been received at the time of her hearing.

[3] Judge Hamilton dissented, in part because of his view that the good faith determination was inherently factual and should, therefore, have been reviewed only for clear error. *Frushour*, 433 F.3d at 410 ("To overturn the bankruptcy court's good faith finding on this record is simply beyond the purview of appellate review. Particularly outrageous is the majority opinion's total disregard of the bankruptcy court's first-hand opportunity to observe Frushour's demeanor and genuineness on the witness stand. This is a good faith inquiry! First hand impressions greatly matter!"). He also expressed concerns based on the absence of evidence that the debtor knew of the income contingent repayment option prior to seeking a discharge. In the present case, the bankruptcy court found an absence of good faith and Ardis was aware of other available options prior to seeking an undue hardship discharge.

**II. Debtor's Loan History and Facts Relevant to Hardship Determination.**

The debt at issue in this appeal results from Ardis's July 1991 consolidation of his pre-existing student loans in the principal amount of $ 23,756. During the four-year period from August 1991 until August 1995, Plaintiff made fourteen sporadic payments totaling roughly $2, 688.94. He received a deferment on September 14, 1992, and a total of eighteen months of forbearance. His last payment was made on August 15, 1994. His loan went into default in April 1995. As of April 11, 2005, the principal and interest balance on the loans totaled $70,631.70.

Plaintiff asserts that he has made the requisite good faith effort to repay the loan because he did make a number of payments before his loan went into default and because his failure to make payments from 1995 through at least 2001 resulted from his mistaken belief that his student loan debt was discharged as a result of one or more of his bankruptcy proceedings. The first of these, a Chapter 7 bankruptcy proceeding, was commenced on June 15, 1995 and concluded on November 22, 1995, with the discharge of all dischargable debts. The second, a Chapter 13 proceeding, commenced on February 2, 1998 and concluded on June 9, 2003.[4]

Despite his claim of misunderstanding, Ardis received notice sometime prior to October 10, 2001, that the then and current holder of the debt, Educational Credit Management Corporation ("ECMC"),[5] took the position that the student loan debt was still owed. This knowledge is

---

[4] Ardis listed his student loan debt on his schedule of liabilities in his Chapter 7 proceeding but not on his schedule of liabilities in his later Chapter 13 proceeding. A proof of claim by the then-holder of Ardis's student loan debt was rejected in the later proceeding based on its late submission. Neither proceeding, however, could have resulted in discharge of the student loan debt absent specific proceedings related to proof of undue hardship. *See* 11 U.S.C. § 523(a)(8).

[5] As discussed in the bankruptcy court's order entered October 27, 2004, the original lender on Ardis's debt consolidation loan was SLMA/Loan Servicing Center ("Sallie Mae"). When Ardis filed for Chapter 7 bankruptcy protection, Sallie Mae assigned the loan to the original guarantor,

4

confirmed by Ardis's October 10, 2001 letter to ECMC challenging ECMC's claim that the debt had not been discharged. Subsequent correspondence between Ardis and the Ombudsman of the United States Department of Education confirms that Ardis was fully aware of the error in his legal position no later than October 24, 2003.

Ardis did not, however, make any payments at this point. Ardis's only effort at negotiating a revised payment schedule was to offer a lump sum payment of $8,000 in satisfaction of a debt that, by that time, was roughly $65,000. Ardis Affid. I at ¶ 11(July 15, 2005). Ardis was offered but declined to pursue other available options for restructuring the debt, including an income contingent plan. *Id.* He did so based, inter alia, on concerns as to the length of time he would be obligated to pay and the possible tax consequences should some portion of the loan ultimately be written off.[6]

At the time of the bankruptcy court hearing, Ardis was employed as a teacher at a junior college. His income from this position was $ 35,302 for 2003 and $40,335 for 2004. The greater income in 2004 was due to his accepting an additional (evening) class and teaching summer school. Because he received temporary custody of his son in 2005, which custody he hoped would become permanent, Ardis did not anticipate being able to take on evening classes during 2005. He did, however, anticipate being able to teach summer school.

---

Great Lakes Higher Education Corporation ("Great Lakes"). Great Lakes, in turn, assigned its interest to the U.S. Department of Education which assigned its interests to ECMC, the appellee here.

[6] Ardis's concerns are based, in part, on the assumption that his financial circumstances would not be likely to change over the 25-30 year course of one of the payment plans. Ardis Affid I at ¶ 11. At least one significant change could, however, be anticipated during that period given that his current sole dependent, an 11 year old son, would presumably become independent within ten years. The son would, moreover, likely not require the level of supervision now required within a much shorter period of time, allowing Ardis to resume a fuller work schedule without added childcare costs. In any case, the rejection of the available repayment plans based on such long range concerns is too speculative to serve as a basis for finding that the plan would impose an undue hardship. *See Frushour,* 433 F.3d at 403 (rejecting similar arguments).

Ardis did not present evidence as to his income for 2002 and earlier years. He also failed to provide tax returns for these years despite discovery requests for those tax returns. Thus, the record does not reflect Ardis's income during much of the period during which he owed but failed to make payments.

Ardis initiated the present action by filing a complaint to determine dischargeability on July 8, 2004. The bankruptcy court held a non-jury trial in that matter on April 25, 2005. An initial order was entered on July 7, 2005. Plaintiff moved to alter or amend that decision pursuant to Fed.R. Civ. P. 59. After oral argument on that motion on August 10, 2005, the court entered an Amended Order on September 6, 2005. It is that order which is before this court.

## III.    Alleged Errors.

Ardis points to some arguable misstatements of fact in the Amended Order which he suggests led to an ultimately incorrect determination as to whether he had made good faith efforts to repay his student loan. Most of the claimed misstatements are, however, either not material or, read in context of the entire Amended Order, do not appear to be errors.

For example, Ardis suggests that the bankruptcy court erred in stating that Ardis had "made no attempt to negotiate or apply for repayment of his debt since he defaulted on his loan on April 26, 1995." As Ardis notes, however, the very next sentence recognizes that Ardis did make an offer to pay $8,000 on what was then a debt in excess of $50,000. Thus, the claimed error appears only if the first sentence is read in isolation from the second as the latter makes clear that the bankruptcy court was aware of Ardis's belated offer to make the partial payment as full satisfaction of the much larger debt.

Later comments in the Amended Order regarding Ardis's failure to renegotiate his loans, likewise, confirm that the bankruptcy court's comments in the first sentence relate to Ardis's failure

"to negotiate any *repayment schedule* which would accommodate [Ardis's] means." Amended Order at 15 (emphasis added). Ardis's only negotiation was an offer to repay less than half of the principal amount in full satisfaction of a debt which, due to Ardis's many years of nonpayment, had grown to over twice the principal amount. In any case, Ardis's offer of such a small partial payment, made roughly eight years after he defaulted, does not require a finding that he made good faith efforts to fulfill his payment obligation. Instead, when considered in connection with Ardis's rejection of other options, it evidences an unwillingness to make *any* payments except on terms of his own choosing. The Fourth Circuit reversed a finding of good faith under very similar circumstances in *Frushour*.

Ardis also suggests error in the bankruptcy court's statements relating to Ardis's circumstances when he received an October 24, 2003 letter from the Ombudsman. The court noted that, at that time, Ardis was no longer paying on his Chapter 13 plan and "lived alone, without dependents." Amended Order at 15. Ardis argues that this is a misstatement of fact because Ardis had child support obligations at that time, even if he did not have a dependent living with him. Other portions of the Amended Order, however, acknowledge that Ardis had child support obligations during the relevant period. Amended Order at 3 & 14. Taken in the context of the full order, the challenged statement does not suggest that the bankruptcy court failed to consider Ardis's support obligation, only that it recognized that Ardis's obligation to support others was *limited* to his child support payment. On this factual record, the bankruptcy court correctly concluded that Ardis's circumstances, including his child support obligations, should not have precluded him from "mak[ing] even one good faith payment on his student loan or . . . explor[ing] other options available to pay the student loan." Amended Order at 15 (noting that Ardis "has also made no attempt to negotiate *any repayment schedule* which would accommodate his means"–emphasis added).

Ardis's other allegations of error, likewise, do not require reversal even accepting that the bankruptcy court may have reached some subordinate incorrect conclusions. For example, Ardis is likely correct in challenging the bankruptcy court's conclusions as to Ardis's motivation in pursuing Chapter 13 protection in 1998.[7] For present purposes, this court assumes that this erroneous finding led the bankruptcy court to conclude that Ardis's actions bordered on abuse of the bankruptcy process. Amended Order at 16-17. The ultimate finding that Ardis had not satisfied the third prong of the *Brunner* test is not, however, dependent on this conclusion. At its core, Ardis's argument that he made good faith efforts to repay his student loan debt rests on his claimed subjective belief that one or both of his bankruptcy proceedings resulted in discharge of his student loan debt. This is an argument for relief based on a negligent belief that no debt was due. Thus, at most it supports a finding that Ardis had not acted with subjective bad faith in delaying payments from the filing of his first bankruptcy proceeding in 1995, until he received notice sometime prior to October 2001 that ECMC took the position the debt was still owed. This is not, however, the relevant standard which requires an affirmative showing of good faith efforts to repay the loan. Neither would it account for Ardis's failure to make reasonable efforts to repay the debt from October 2001 until this adversary proceeding was filed. In short, to accept Ardis's reasoning would encourage blind ignorance of the bankruptcy laws by individuals who have affirmatively sought their protections. This is clearly contrary to the intent of 11 U.S.C. §523(a)(8). *See generally Frushour*,

---

[7] The bankruptcy court concluded that Ardis's pursuit of Chapter 13 protection in 1998 was motivated by a desire to avoid the student loan debt here at issue. Amended Order at 17. As Ardis correctly notes, however, the student loan debt was not listed in his Chapter 13 filings. This fact is consistent with Ardis's claim that he mistakenly believed his student loan debt was discharged in the earlier Chapter 7 proceeding and is inconsistent with the bankruptcy court's conclusions as to the motivation for the Chapter 13 proceeding.

433 F.3d at 399-400 (discussing policy considerations which prompted Congress to impose the undue hardship requirement for discharge of student loans).

Most critically, when his continuing debt was brought to his attention, Ardis rejected reasonable alternatives suggested by the Ombudsman, including an income contingent plan, which would have allowed him to repay his debts over an extended period of time with potential forgiveness of any amount due at the end of the repayment period. Addressing a similar situation in *Frushour*, the Fourth Circuit reversed a bankruptcy court finding of good faith:

> Frushour's only reasons for refusing [the income contingent payment plan], were that it was not suited for her and she wanted a fresh start. It is hard to see why these reasons are not simply shorthand for her lack of interest in repaying her debt. The consolidation plan would allow her both to remain at her preferred job and to maintain her current level of expenditures. Accounting for these considerations, Frushour has provided insufficient justifications for refusing to take a simple step that would have allowed her to fulfill her commitments in a manageable way.

*Frushour,* 433 F.3d at 403.[8]

The bankruptcy court found that Ardis's single and belated offer to pay a very small percentage of the amount then due in full satisfaction of his student loan debt, rather than exploring available plans for repayment, was not sufficient to support a finding that he had made good faith

---

[8] Frushour's circumstances were, if anything, more dire than Ardis's. While Ardis's income has ranged from $35,000 to $40,000 in the two most recent years considered by the bankruptcy court, Frushour's income ranged between $7,000 and $11,000. Moreover, Frushour had never earned in excess of $20,000. (Ardis, by contrast, did not present evidence of his income prior to the most recent two years.)

Both Frushour and Ardis have a single dependent. Frushour's child was, at the time at issue, significantly younger than Ardis's child. Consequently, Frushour could anticipate a longer period in which she would need to support this child. Somewhat balancing this, Ardis and his child have greater than normal medical expenses ($200 to $350 per month). Even with this additional expense, however, it is clear that Ardis was, at all relevant times, in better financial circumstances than Frushour.

Despite her more severe circumstances, Frushour had made 24 voluntary payments before defaulting, as well as at least one very significant involuntary payment (of over $1,900). Ardis, by contrast, made only 14 payments.

efforts to repay the loan. This finding is well supported by the factual record in this case and is not, therefore, clearly erroneous to the extent reviewed as a finding of fact. In light of *Frushour*, it is also clearly a correct legal conclusion when subjected to a *de novo* review.

## CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court is affirmed.

IT IS SO ORDERED.

      s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 6, 2006

C:\temp\notesB0AA3C\~3445708.wpd